UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
GUADALUPE L. GARCIA, et al.,        )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )   Civil Action No. 00-2445 (RBW)
                                    )
THOMAS J. VILSACK,                  )
Secretary, The United States        )
Department of Agriculture,          )
                                    )
            Defendant.              )
_____)

## MEMORANDUM OPINION

The plaintiffs in this civil action are Hispanic farmers who allege that the United States Department of Agriculture ("USDA") discriminated against them on the basis of national origin in the administration of its farm loan and disaster benefit programs, and that it failed to timely resolve their discrimination complaints. Third Amended Class Action Complaint ¶¶ 102, 113, 115. The Black Farmers & Agriculturalists Association, Inc. ("Association") has moved to intervene in this action pursuant to Federal Rule of Civil Procedure 24. Motion of Black Farmers and Agriculturalists Association, Inc. to Intervene ("Mot.") at 1. Upon careful consideration of the relevant submissions,[1] the Court concludes that it must deny the motion for the reasons set forth below.[2]

---

[1] In addition to the Association's motion to intervene, the Court considered the following filings in reaching its decision: (1) the Defendant's Opposition to Motion to Intervene ("Def.'s Opp'n"); (2) the Plaintiffs' Opposition to Black Farmers and Agriculturalists Association, Inc.'s Motion to Intervene ("Pls.' Opp'n"); and (3) the Reply of Black Farmers and Agriculturalists Association, Inc. (BFAA) to Opposition to Motion to Intervene ("Reply").

[2] The Court is contemporaneously issuing a memorandum opinion resolving the Association's motion to intervene in Love v. Vilsack, No. 00-2502 (D.D.C. filed Oct. 19, 2000), which addresses claims of female farmers similar to those asserted in this case.

1

## I. BACKGROUND

Between 1997 and 2000, African-American, Native American, Hispanic, and female farmers filed four similar class action lawsuits alleging that the USDA engaged in widespread discrimination on the basis of race, ethnicity, or gender in the administration of its farm loan and benefit programs, and that it routinely failed to investigate complaints of such discrimination. See Pigford v. Glickman, Nos. 97-1978, 98-1693 (D.D.C. filed Aug. 28, 1997, July 7, 1998) ("Pigford I") (African-American farmers); Keepseagle v. Vilsack, No. 99-03119 (D.D.C. filed Nov. 24, 1999) (Native American farmers); Garcia v. Vilsack, No. 00-2445 (D.D.C. filed Oct. 13, 2000) (Hispanic farmers); Love v. Vilsack, No. 00-2502 (D.D.C. filed Oct. 19, 2000) (female farmers). Judge James Robertson, a former member of this Court, denied the plaintiffs' motions for class certification in this action and in Love v. Vilsack.[3] See Garcia v. Veneman, 224 F.R.D. 8 (D.D.C. 2004), aff'd and remanded sub nom. Garcia v. Johanns, 444 F.3d 625 (D.C. Cir. 2006); Love v. Veneman, 224 F.R.D. 240 (D.D.C. 2004), aff'd in part, remanded in part sub nom. Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006). The defendant has, however, developed an administrative claims process for Hispanic and female farmers to resolve their claims of discrimination against the USDA. See Defendant's Eighth Status Report at 1, ECF No. 218; Defendant's Status Report at 1, Love, No. 00-2502 (D.D.C. Jan. 20, 2012), ECF No. 155. Participation in the administrative claims process is conditioned on dismissal of a farmer's legal claims against the USDA. See Defendant's Eighth Status Report, Exhibit ("Ex.") 1 (Framework for Hispanic or Female Farmers' Claims Process) at 6, ECF No. 218-1; Defendant's Status Report, Ex. 1 (Framework for Hispanic or Female Farmers' Claims Process) at 6, Love, No. 00-2502 (D.D.C. Jan. 20, 2012), ECF No. 155-1.

---

[3] Upon Judge Robertson's retirement from this Court, Garcia and Love were reassigned to the undersigned member of the Court.

The Association is "a not-for-profit organization created for the specific purpose of responding to the issues and concerns of Black Farmers in the United States and abroad," Mot. at 2, and it seeks to intervene in this action and Love on behalf of its members who asserted time-barred claims in Pigford I, see Mot. at 6; Mot., Ex. 1 (Proposed Complaint) ¶¶ 15, 19. A brief overview of the Pigford litigation is necessary to understand the Association's asserted interest in this case and in Love.

On October 9, 1998, Judge Paul L. Friedman of this Court certified Pigford I as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) for purposes of liability.[4] Pigford v. Glickman, 182 F.R.D. 341, 352 (D.D.C. 1998). Judge Friedman later vacated his original class certification order on January 5, 1999, and certified a new class pursuant to Rule 23(b)(3).[5] Pigford v. Glickman, 185 F.R.D. 82, 92 (D.D.C. 1999). Following the Court's class certification rulings, the Pigford I parties negotiated a class-wide settlement, which Judge Friedman approved in a consent decree issued on April 14, 1999. Id. at 113. The Pigford I consent decree established an administrative claims process "by which each class member would have an opportunity to demonstrate that he or she had been the victim of past discrimination by the USDA and therefore was entitled to compensatory damages." In re Black Farmers Discrim. Litig., 856 F. Supp. 2d 1, 9 (D.D.C. 2011).

The Pigford I consent decree imposed a deadline for African-American farmers to submit their claims for administrative adjudication, id. at 10, and many farmers tried, unsuccessfully, to file claim packages after the deadline expired, id. at 11. To address this problem, "Congress

---

[4] Rule 23(b)(2) permits class certification where, among other things, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

[5] Rule 23(b)(3) permits class certification where, among other things, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

resurrected the claims of those who had unsuccessfully petitioned the Arbitrator for permission to submit late claim packages" with a provision in the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill"), id., which provides that "[a]ny Pigford claimant who has not previously obtained a determination on the merits of a Pigford claim may, in a civil action brought in the United States District Court for the District of Columbia, obtain that determination," id. (quoting Pub. L. 110–234, § 14012(b), 122 Stat. 923, 1448 (2008)).  After this provision became effective, thousands of African-American farmers filed suit in this Court. Id. at 13.  The Association also brought suit on behalf of its members who were eligible to file claims under the 2008 Farm Bill.  Complaint to Determine Merits and Damages Pursuant to § 14012 of the Food, Conservation and Energy Act of 2008 ¶ 1, Black Farmers & Agriculturalists Ass'n, Inc. v. Schafer, No. 08-1188 (D.D.C. July 9, 2008), ECF No. 1.  These cases were all subsequently consolidated before Judge Friedman, and are collectively known as Pigford II.  In re Black Farmers, 856 F. Supp. 2d at 13.

  The parties in Pigford II reached a class-wide settlement agreement on February 18, 2010, id., which Judge Friedman approved, id. at 42.  The settlement agreement largely maintained the administrative claims process utilized in Pigford I, with some modifications.  Id. at 22.  Judge Friedman certified a settlement class consisting of "[a]ll individuals: (1) who submitted Late-Filing Requests under Section 5(g) of the Pigford v. Glickman Consent Decree on or after October 13, 1999, and on or before June 18, 2008; but (2) who have not obtained a determination on the merits of their discrimination complaints . . . ."  Id. at 15.  Notably, unlike the Pigford I class, Pigford II class members were not permitted to opt out of the class.  See id. at 9, 32–33.  The order and judgment granting approval of the settlement agreement provided that

> the Class Representatives, the Class, and its members and their heirs, administrators, successors, and assigns release, waive, acquit and forever

> discharge the United States and the Secretary from and are forever barred and precluded from prosecuting, any and all claims, causes of action, or requests for any monetary relief . . . that have been or could have been asserted in the Consolidated Case by reason of, with respect to, in connection with, or which arise out of, any matters alleged in the Consolidated Case that the Class Representatives, the Class, and its members, and their heirs, administrators, successors, and assigns have against the United States or the Secretary, or any of them.

Order and Judgment ¶ 19, Pigford II, No. 08-mc-0511 (D.D.C. Oct. 27, 2011), ECF No. 231. The Association was terminated as a party in Pigford II, Amended Class Action Complaint to Determine Merits and Damages Pursuant to § 14012 of the Food, Conservation and Energy Act of 2008, As Amended at 1 n.1, Pigford II, No. 08-mc-0511 (D.D.C. Apr. 5, 2011), ECF No. 163, and is not a member of the settlement class, see Latham v. Vilsack, Nos. 11-5326, 11-5334, 12-5019, 2012 WL 10236550, at *1 (D.C. Cir. July 25, 2012).

The Association seeks to intervene in this litigation to assert two claims. Mot., Ex. 1 (Proposed Complaint) ¶¶ 16–23. First, it seeks a declaration finding that "both the Equal Protection Clause and Due Process Clauses of the United States Constitution mandate[] that its members who are eligible 'Pigford claimants' under the 2008 Farm Bill, but did not timely file claims are entitled to file claims, under the framework established for Hispanic and female farmers." Id. ¶ 19. The Association's second claim is for injunctive relief with respect to the USDA's current loan approval process, specifically, "a permanent injunction against [the] USDA and its subordinate county level loan processing entities to refrain from discrimination in processing loan applications of Black Farmers," id. ¶ 21, and "an order restructuring the present loan approval process that removes the [county][6] and local level aspects of the process and

---

[6] Although the proposed complaint uses the word "country" here, the Court assumes that this is a typographical error and the Association intended to use the word "county" because the relief sought in paragraph 21 of the proposed complaint refers to "county level loan processing entities," and the clause that immediately follows the term "country" in paragraph 22 itself is directed at "local level aspects of the [present loan approval] process."

5

replaces it with a more equitable organizational structure," id. ¶ 22.  Both the defendant and the plaintiffs oppose the motion to intervene.

## II. STANDARD OF REVIEW

The Association seeks to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, permissively pursuant to Rule 24(b).  Mot. at 6.

Federal Rule of Civil Procedure 24(a) provides that "on timely motion," a court must allow a party to intervene if it

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  In assessing a motion to intervene as of right, a court must consider the motion's timeliness, whether the movant "claims an interest relating to the property or transaction which is the subject of the action," whether the movant "is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest," and whether the movant's interest "is adequately represented" by the existing parties to the litigation.  Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (citation omitted).  A party seeking to intervene as of right must additionally establish standing under Article III of the Constitution.  Id. at 731–32.

Pursuant to Federal Rule of Civil Procedure 24(b), "on timely motion," a court may permit a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In determining whether permissive intervention is appropriate, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P.

24(b)(3). Permissive intervention is "inherently discretionary," EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998), and a court may deny a motion for permissive intervention even if the movant has met all of the requirements of Rule 24(b), id. at 1048.

### III. ANALYSIS

While the Court sympathizes with the Association members who failed to timely assert Pigford claims, the Association's motion to intervene in this litigation fails on every score. The Court agrees with the defendant that the Association's first claim is plainly barred by Pigford II, which unequivocally extinguished the right of any Pigford claimant to receive a determination on the merits of a claim outside of the claims process created by Pigford II.[7] See Order and Judgment ¶¶ 1, 18–19, Pigford II, No. 08-mc-0511 (D.D.C. Oct. 27, 2011), ECF No. 231. The Association's motion suffers from a more fundamental defect, however. In order to intervene as of right, the Association must establish that it has Article III standing. Fund for Animals, Inc., 322 F.3d at 731–32. As alluded to by the defendant, Def.'s Opp'n at 5 n.1; see also Def.'s Opp'n at 5–6, the Association's standing to pursue its first claim is far from evident.[8]

"'The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability.'" Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C. Cir. 2011) (citation omitted). "'Thus, to establish standing, a litigant must demonstrate a personal injury fairly traceable to the [opposing party's] allegedly unlawful conduct [that is] likely to be redressed by the requested relief.'" Id. (citation omitted). "The

---

[7] The Association contends that Pigford II does not bar its claim because it was dismissed from the litigation and thus was not a member of the settlement class. Reply at 4. The Association brings its claim on behalf of its members, however, who are members of the Pigford II class. Order and Judgment ¶¶ 1, 19, Pigford II, No. 08-mc-0511 (D.D.C. Oct. 27, 2011), ECF No. 231.

[8] The defendant's standing argument focuses on the Association's failure to demonstrate redressability in light of this Court's reasoning in Cantu v. United States, 908 F. Supp. 2d 146 (D.D.C. 2012), Def.'s Opp'n at 5–6, to which the Association makes no response. Because the Court finds that the Association has failed to demonstrate Article III standing by its virtual silence on the topic, the Court need not address the merits of the defendant's redressability argument.

absence of any one of these three elements defeats standing." Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010). An association has standing to bring suit on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Nat'l Ass'n of Home Builders, 667 F.3d at 12 (citation and internal quotation marks omitted).

> In its proposed complaint, the Association asserts that it
>
>> seeks a declaration that both the Equal Protection Clause and Due Process Clauses of the United States Constitution mandate[] that its members who are eligible 'Pigford claimants' under the 2008 Farm Bill, but did not timely file claims are entitled to file claims, under the framework established for Hispanic and female farmers.

Mot., Ex. 1 (Proposed Complaint) ¶ 19. While it is apparent that the Association's objective in intervening is to obtain an opportunity for its members to participate in the administrative claims process for Hispanic and female farmers, see id. ¶¶ 11, 19; Mot. at 6; Reply at 6, the nature of the Association members' asserted injury, how that injury is fairly traceable to the USDA's conduct, and how the requested relief will redress that injury is less clear. For example, if, as it appears, the harm that the Association seeks to redress is its members' inability to obtain a determination on the merits of their claims, the Court is at a loss to discern how this injury is fairly traceable to the defendant's actions in this case and whether the Association's requested relief would likely redress this injury. See Mot. at 11 (describing the Association's first claim as alleging that "the additional claim process is unconstitutional unless [the Association's] members are permitted to intervene"). The Association's motion yields no assistance here, providing only a recitation of the requirements for standing and the conclusory statement that it "has standing to sue based on injuries to itself or to its members." Mot. at 7. The Association has therefore failed to

demonstrate Article III standing to pursue its first claim, as it must to intervene as of right in this litigation.[9]

While the Association's second claim[10] does not present the same standing problems, the Court agrees with the plaintiffs that the Association's motion does not satisfy the requirements for either intervention as of right or permissive intervention, see Pls.' Opp'n at 1–2, because the Association's motion is untimely, a prerequisite for both modes of intervention, see Fed. R. Civ. P. 24(a), (b). The timeliness of a motion to intervene

> is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.

Smoke v. Norton, 252 F.3d 468, 471 (D.C. Cir. 2001) (citation omitted). The plaintiffs filed their complaint on October 13, 2000, see ECF No. 1, and the defendant first announced its

---

[9] The Court notes that several other obstacles preclude the Association from intervening here to pursue its first claim. As set forth below, the Association's motion to intervene is untimely. In addition, as the plaintiffs note, Pls.' Opp'n at 1–2, the Association fails to assert an interest sufficient to entitle it to intervene in this litigation. "[I]ntervention aims to protect interests which are 'of such direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'" United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1292 (D.C. Cir. 1980) (quoting Smith v. Gale, 144 U.S. 509, 518 (1892)). A judgment in this case will have virtually no effect on the Association's members. It will not address the merits of the Association's claim and will not preclude them from raising it in separate litigation. In its motion, the Association focuses on the flexible approach endorsed by this Circuit in Nuesse v. Camp, 385 F.2d 694 (D.C. Cir. 1967), which characterized the "interest" inquiry as "'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" Mot. at 8 (quoting Nuesse, 385 F.2d at 700). The Association places more weight upon this language than it can bear. The Association seeks to interject a claim which appears to challenge the USDA's creation of the administrative claims process for Hispanic and female farmers, involving a statute which has no bearing whatsoever on the plaintiffs in this litigation and in Love, solely on the basis of a history of similar allegations of discrimination by the USDA against African-American, Hispanic, and female farmers, allegations which have been to this point litigated in separate actions. While there may be a shared history of discrimination, the Court finds that the Association's first claim, which appears to raise entirely new legal and factual issues, has little in common with the existing claims in this case. Moreover, inserting such a claim into this litigation at this late date is clearly incompatible with efficiency, as set forth in greater detail in the Court's discussion of the timeliness of this motion. The Association's motion to intervene to pursue its first claim thus fails on multiple fronts.

[10] The Court notes that while the Association's proposed complaint includes a claim for injunctive relief relating to discrimination in the USDA's present loan approval process, Mot., Ex. 1 (Proposed Complaint) ¶¶ 21–23, its motion to intervene focuses exclusively on its first claim regarding participation in the administrative claims process provided for Hispanic and female farmers.

intention to establish an administrative claims process for Hispanic and female farmers in September 2010, see Defendant's Status Report at 1, ECF No. 181; Defendant's Status Report at 1, Love, No. 00-2502 (D.D.C. Sept. 23, 2010), ECF No. 112.  The claims process was finalized in January 2012.  See Defendant's Eighth Status Report, ECF No. 218; Defendant's Status Report at 1, Love, No. 00-2502 (D.D.C. Jan. 20, 2012), ECF No. 155.  The Association did not move to intervene for nearly thirteen years after the plaintiffs filed suit, almost three years after the USDA announced its intention to create the administrative claims process to settle the claims asserted in this litigation, and just over a year after the USDA finalized the claims process.  The Association's motion is untimely as measured from any of these points, see Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am., 543 F.2d 224, 228 (D.C. Cir. 1976) (upholding denial of motion to intervene based on untimeliness because "[a]ny measure of timeliness of the motion to intervene must be cast against the backdrop of two years of controversy between the unions which now have reached settlement"), and the Association provides no reason for its delay.  Indeed, it is apparent that its decision not to seek intervention earlier was a strategic choice to instead participate in the parallel Pigford litigation, a circumstance that weighs against intervention.  See id.

       The other factors the Court must consider also weigh in favor of finding the Association's motion untimely.  While the Association's first claim relates solely to the administrative claims process, its purpose for intervention with respect to the second claim is to obtain injunctive relief relating to discrimination against African-American farmers in the USDA's current loan approval process, a claim appropriately brought at the beginning, rather than the end, of this litigation.  This litigation is quite advanced, and injection of new claims at this point will serve only to delay further the conclusion of this long-running case for the existing parties.

Intervention would require further proceedings to address new issues and potentially new factual development since the Association's second claim relates to the USDA's "present loan approval process," Mot., Ex. 1 (Proposed Complaint) ¶ 22 (emphasis added), and therefore is likely to prejudice the existing parties, see Roane v. Leonhart, 741 F.3d 147, 152 (D.C. Cir. 2014) (identifying further discovery and argument on additional issues as sources of prejudice in evaluating the timeliness of a motion to intervene).

Moreover, the Association need not intervene here to pursue its second claim.[11] While the ability to bring a claim in separate litigation is not in itself a sufficient reason to deny intervention, Natural Res. Def. Council v. Costle, 561 F.2d 904, 910 (D.C. Cir. 1977), the fact that the Association will suffer no harm if intervention is denied[12] is very relevant to the Court's assessment of the timeliness of its motion when all of the other considerations before the Court indicate that the Association's intervention at this late date will serve only to disadvantage the existing parties, delay the resolution of this protracted litigation, and unnecessarily complicate an already-complex proceeding by injecting new issues when the litigation has advanced to the point it has reached here. Indeed, "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties," Roane, 741 F.3d at 151, which is exactly what the Association's intervention here would occasion.

---

[11] The Court expresses no opinion as to whether this claim is barred by Pigford II.

[12] The Association contends that intervention "is necessary to prevent grave injury" and that it will suffer "great harm" if intervention is denied. Mot. at 12. However, the Association provides no explanation as to what that harm might be. Left to speculate as to what it might mean by these assertions, the Court concludes that the Association is likely referring to the denial of an opportunity for its members to participate in the administrative claims process established for Hispanic and female farmers because, as noted earlier, the Association's motion focuses exclusively on this requested relief. However, the Court has already concluded it has not demonstrated its standing to bring such a claim.

The Association responds that since this litigation has been stayed while claimants seek resolution through the administrative claims process, the Association's intervention "will not delay or otherwise prejudice the parties for the reason the litigation will resume and a new case schedule will be formulated."  Reply at 6.  Accepting this reasoning would render Rule 24's timeliness requirement meaningless because intervening at any time short of final judgment would constitute timely intervention due to the fact that intervention would generally require that the litigation proceed under a revised scheduling order.  The Association also argues that the plaintiffs do not set forth any "specific grounds" in support of their contention that the motion to intervene is untimely.  Id. at 6.  But the plaintiffs argue that the Association's motion is untimely for precisely the reason stated above—the fact that this litigation was already far advanced when the Association moved to intervene.  Pls.' Opp'n at 1.  The Association cites no authority for the proposition that anything more is required of the plaintiffs, and the Court has found none.  Accordingly, the Court finds that the Association's motion to intervene is untimely and that neither intervention as of right nor permissive intervention is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Association's motion to intervene is denied.

**SO ORDERED** this 13th day of June, 2014.[13]

REGGIE B. WALTON<br>United States District Judge

---

[13] The Court will contemporaneously issue an order consistent with this memorandum opinion.