1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10

GLORIA PALACIOS MORALEZ

Plaintiff,

v.

THOMAS J. VILSACK, Secretary, United
States Department of Agriculture,

Defendants.

**CASE NO. 1:16-CV-0282-AWI-BAM**

**ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL
FOR LACK OF SUBJECT-MATTER
JURISDICTION**

**ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

11
12
13
14
15
16

## I. Introduction

17

Plaintiff Gloria Palacios Moralez ("Plaintiff") is a Hispanic woman. In the 1970s,

18
19
20
21
22
23
24
25
26

Plaintiff found an 80-acre tract of land near Fresno, California, where she intended to farm. She

applied to the United States Department of Agriculture's ("USDA") Farmers Home

Administration ("FmHA")[1] for a farm ownership loan, an operating loan, and an equipment loan

that she required to acquire and farm the land. In 1980 and 1981, Plaintiff was approved for the

requested loans, albeit in an amounts less than requested. Despite Plaintiff's eligibility,

beginning in 1983 and continuing until 1998, FmHA refused to provide Plaintiff any additional

credit. Further, FmHA denied Plaintiff loan servicing, denied disaster relief, and attempted to

foreclose on Plaintiff's farm during a bankruptcy stay. In 1998, Plaintiff sold her farm. She

27
28

---

[1] During the 1994 reorganization of the USDA, the FmHA was reorganized into the Farm Service Agency ("FSA").
*See* 7 U.S.C. 6932(a-b) (authorizing the Secretary to establish the FSA and consolidate the farm loan programs
previously assigned to the FmHA to the FSA); USDA, *Service Center Agencies: Farm Service Agency*,
https://www.sc.egov.usda.gov/AboutSCA.html (last visited December 19, 2016).

1   alleges that the adverse loan determinations and other actions taken against her by the USDA

2   were based on racial and sex discrimination. Presently pending before the Court are plaintiff's

3   claims for discrimination on the basis of race and sex in (1) denying loans and loan servicing in

4   violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 et seq., and (2)

5   denying disaster payments in violation of the Administrative Procedures Act ("APA"), 5

6   U.S.C.§§ 701, et seq.

7        Defendant Thomas J. Vilsack, Secretary of the USDA (the "Secretary"), moves to

8   dismiss Plaintiff's ECOA claim for lack of subject-matter jurisdiction and, in the alternative,

9   moves for partial summary judgment. For the following reasons, the Secretary's motion to

10  dismiss will be denied and the Secretary's motion for partial summary judgment will be granted.

11                                **II. Background**

12  <u>A. The USDA Farm Loans Programs</u>

13       The UDSA provides—now through the FSA and formerly through FmHA—ownership

14  loans, operating loans, disaster loans, and other credit benefits and payments to farmers. Fourth

15  Amended Complaint ("FAC"), Doc. 391 at ¶ 20; *see Shiplet v. Veneman*, 620 F.Supp.2d 1203,

16  1208-1209 (D. Mont. 2009) (describing the available loan programs). The USDA loans fall into

17  two categories: (1) direct loans where the borrower applies directly to the FSA for financing; and

18  (2) guaranteed loans where the FSA guarantees that it will reimburse a commercial lender for a

19  portion of any loss that the lender may suffer on the loan. FAC at ¶ 21; *see Shiplet*, 620

20  F.Supp.2d at 1208.[2]

21       The USDA also provides what it refers to as "loan servicing"—a form of lending

22  assistance designed to help borrowers who have trouble paying back their FSA loans. Loan

23  servicing services include principal write downs, loan interest reductions, loan term

24  rescheduling, loan payment deferrals, and a leaseback/buyback program that allows farmers to

25  buyback collateral that had been lost to the USDA through foreclosure. FAC at ¶ 21.[3]

26

27  [2] USDA, FSA, *Farm Loan Programs*, https://www.fsa.usda.gov/programs-and-services/farm-loan-programs/ (last
    visited Dec. 19, 2016).

28  [3] USDA, FSA, *Loan Servicing*, https://www.fsa.usda.gov/programs-and-services/farm-loan-programs/farm-loan-servicing/index (last visited December 19, 2016).

The USDA implemented the federal farm programs using a "three-tiered management system" broken into a national supervisory level in Washington, DC, a state level, and a county level. FAC at ¶ 24. Although "[t]he credit and benefit programs are federally funded," applications for loans and servicing are submitted, and approved or denied by committee at the county level. *Pigford v. Glickman*, 185 F.R.D. 82, 86 (D.D.C. 1999) *aff'd*, 206 F.3d 1212 (D.C. Cir. 2000); *see* FAC at ¶ 25.

B. Plaintiff's History[4]

In 1980, Plaintiff applied to FmHA for an ownership loan. FAC at ¶ 28. Immediately, the "agency engaged in discriminatory conduct against her by working hard to discourage her from completing the loan application process" by refusing to permit her to apply until "after she … wr[o]te a special essay and ma[d]e a special presentation to the Fresno County FmHA staff." FAC at ¶¶ 28, 30. No other similarly-situated white male farmers were required write an essay or make a presentation to the FmHA. FAC at ¶¶ 28, 30. Plaintiff also alleges that the chairman of the FmHA county committee directly told Plaintiff that "farming was 'not a proper business for a woman, much less a Mexican woman with two kids.'" FAC at ¶ 30. Plaintiff's ownership loan application was denied twice for allegedly discriminatory purposes; allegedly pretextual reasons for the loan denials were given. FAC at ¶ 31. After the two denials of Plaintiff's application for an ownership loan but before the end of 1980, Plaintiff obtained a $200,000.00 limited resource farm ownership loan from FmHA.  FAC at ¶ 28.

After Plaintiff used the farm ownership loan to purchase her land, "she immediately returned to FmHA for additional credit to fund equipment purchases and operating expenses." FAC at ¶ 34. In 1981, Plaintiff applied for an equipment loan in the amount of $50,000.00. FAC at ¶ 35. She was approved for an equipment loan only in the amount of $26,300.00. FAC at ¶ 35. Plaintiff also sought and obtained a $31,200.00 operating loan to plant cotton. FAC at ¶ 35. However, the funds were distributed into a supervised bank account, a condition that similarly-situated white male farmers were not subject to. FAC at ¶ 35.

---

[4] The Court only provides the portions of Plaintiff's allegations related to determining subject-matter jurisdiction over Plaintiff's first claim.

In the same year, Plaintiff sought an economic emergency loan. FAC at ¶ 36. The FmHA county committee denied the loan finding that Plaintiff was not a "bona fide farmer" despite the fact that a finding of bona fide farmer status was necessary to have obtained the ownership loan obtained in the previous year. FAC at ¶ 36.

In 1983, Plaintiff was told by "the Fresno County FmHA staff," specifically Mikael Alle and Bob Pearson, to never apply for another FmHA loan again and that "they would make sure she never got one." FAC at ¶¶ 37, 40. The Fresno County FmHA denied Plaintiff's loan requests because, they told her, she had failed to comply with her farm and home plan. FAC at ¶¶ 40-41. Similarly situated white male farmers obtained additional operating and emergency loans from the Fresno County FmHA office throughout the 1980s and 1990s and were not told that variation from their farm and home plans would prevent extension of credit. FAC at ¶ 40.

From 1982 to 1992, Plaintiff annually submitted farm and home plan proposals and sought operating loans but was denied the right to file loan applications or was otherwise discouraged from filing the loan application. FAC at ¶ 41.

In 1986, FmHA proposed a restructuring of Plaintiff's debt. FAC at ¶ 47. Plaintiff agreed, but now believes that the two-year deferral of payments in exchange for a higher interest rate was not in her best interest. FAC at ¶ 47. Plaintiff alleges that no similarly situated white male farmer was required to pay a higher interest rate as a condition of a two-year deferral. FAC at ¶ 47.

In 1989, Plaintiff applied for "1951-S" loan servicing, a program under which "FmHA would write down or modify repayment terms of outstanding FmHA farm debt" to allow a farmer sufficient capital to run a successful farming operation. FAC at ¶ 49. Despite her eligibility for 1951-S servicing, the FmHA denied her proposal. FAC at ¶ 49. Instead, FmHA gave Plaintiff the option to surrender title to her property under the leaseback/buyback program. FAC at ¶ 49. Plaintiff refused the leaseback/buyback proposal in 1991. FAC at ¶ 49. Similarly situated white male farmers were given access to 1951-S servicing in the same time period. FAC at ¶ 50.

After Plaintiff refused the leaseback/buyback proposal, FmHA "aggressively sought to

4

foreclose on [Plaintiff's] farm…." FAC at ¶ 54.

In 1992, Plaintiff filed bankruptcy and FmHA refused to have any further dealings with her. FAC at ¶ 41. However, even after a bankruptcy stay was issued, FmHA continued to try to foreclose on Plaintiff's farm.

In 1993, Plaintiff lost approximately 70% of her raisin crop. FAC at ¶ 55. She believes that the loss was a result of weather conditions or an infection by phomopsis (a grape fungus) and Pierce's Disease (a bacterium that attacks grape vines) or a combination of weather and disease. FAC at ¶ 55. Plaintiff applied to the Agricultural Stabilization and Conservation Service ("ASCS")[5] for disaster relief.

Plaintiff alleges that she "filed discrimination complaints with the USDA each year from 1984 through 1990, and again in 1992, 1993, and 1994 regarding the FmHA" discrimination outlined above. FAC at ¶ 58. Plaintiff never received a response to her USDA farm loan program discrimination complaints. FAC at ¶ 58. Plaintiff also submitted similar complaints to Congressmen Ceolho, Pashayan, and Dooley of California, and Congressman Bonilla of Texas.

### C. The USDA Administrative Complaint Process

Since 1964, the USDA has officially prohibited discrimination in the administration of its loan programs. 29 Fed. Reg. 16,966 (Dec. 7, 1964) (promulgating 7 C.F.R. §§ 15.51-52). Since 1966, an administrative complaint process has been in place for farmers to submit claims to the USDA regarding discrimination in connection with its loan programs. *See* 31 Fed. Reg. 2,645 (Feb. 11, 1966) (promulgating 7 C.F.R. § 15.52 ("Any person … subjected to discrimination [by the USDA may] ... file directly with the Secretary or any agency a written complaint….")).[6] Such complaints could be filed with the Secretary, with the Office of Civil Rights Enforcement and Adjudication ("OCREA"), or with FmHA. *See Pigford v. Glickman*, 182 F.R.D. 341, 343 (D.D.C. 1998).

### D. The Equal Credit Opportunity Act

---

[5] The ASCS was also reorganized into the FSA in 1994. *See* Note 1, *supra*.

[6] In 1999, 7 C.F.R. §§ 15.50-52 were removed. Substantially identical regulations were added at 7 C.F.R. §§ 15d.1-4. 64 FR 66709-01 (Nov. 30, 1999). In 2014, Part 15d was modified to insert definitions at 7 C.F.R. § 15d.2, and redesignate the former 7 C.F.R. §§ 15d.2, 15d.3, and 15d.4 to §§ 15d.3, 15d.4, and 15d.5. 79 FR 41410-01 (July 16, 2014).

The ECOA prohibits "any creditor from discriminating against any applicant, with respect to any credit transaction … on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. §1691(a)(1). The term "creditor" as used in the ECOA includes the United States and thereby waives the United States' sovereign immunity for claims brought within the ECOA. *Shiplet v. Veneman*, 383 Fed.Appx. 667, 1 (9th Cir. 2010); *Benoit v. USDA*, 577 F.Supp.2d 12, 16-17 (D. D.C. 2008) (citing, *inter alia*, 15 U.S.C. §§ 1691a(e), (f); *Moore v. USDA*, 55 F.3d 991, 994-995 (5th Cir. 1995)); *see Garcia v. Johanns*, 444 F.3d 625, 629 n.4 (D.C. Cir. 2006) (The "ECOA creates a private right of action against a creditor, including the United States, who discriminates against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age or because the applicant has in good faith exercised any right under this chapter.") (internal quotation marks and citation omitted).

The protections afforded by the ECOA may be enforced by an aggrieved applicant through a private right of action for equitable relief or declaratory relief or to recover damages. 15 U.S.C. § 1691e(a), (c). During the relevant time period, an aggrieved applicant was required to bring such an action within two years[7] of the date of violation. 15 U.S.C. § 1691e(f) (2010).

E. The USDA Internal Investigation of Discrimination

Despite the theoretical availability of a USDA complaint system, "[i]n 1983, OCREA essentially was dismantled and complaints that were filed were never processed, investigated, or forwarded to the appropriate agencies for conciliation. As a result, farmers who filed complaints of discrimination never received a response, or if they did receive a response it was a cursory denial of relief." *Pigford*, 185 F.R.D. at 88. In 1996, Secretary of Agriculture Dan Glickman appointed a Civil Rights Action Team to investigate the allegations of ignored discrimination. *Pigford*, 185 F.R.D. at 88. The USDA has summarized its failures to investigate and redress discrimination by its county offices in the 1980's and 1990's as follows:

---

[7] Effective July 21, 2011, as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Congress extended the limitations period for an action under Section 1691e from two to five years. Pub.L. 111-203, Title X, §§ 1085(7), 1100H, July 21, 2010, 124 Stat. 2085, 2113.

During much of the 1980's and 1990's, the USDA administrative processes for review of program civil rights complaints filed against USDA agencies by program participants did not function effectively. As a result, while administrative complaints were pending, the statutes of limitation for certain discrimination statutes under which complainants potentially could obtain relief continued to run and the time periods available for obtaining relief expired, thus foreclosing the possibility for relief for those who had filed discrimination complaints administratively with the Department. Accordingly, the Secretary of Agriculture sought the enactment of legislation to waive the applicable statutes of limitation for those individuals who had filed nonemployment related discrimination complaints with USDA alleging discrimination during that time period.

63 FR 67392-01 (Dec. 4, 1998).

F. The Congressional Response

Despite the USDA's recognition that it failed to prevent and redress discrimination in the 1980's and 1990's, in ECOA actions arising out of discrimination during that period, the USDA regularly relied upon the two-year statute of limitations. *Pigford*, 185 F.R.D. at 88. In 1998, Congress responded by resetting the two-year statute of limitations for famers who submitted "eligible [administrative] complaints"—complaints alleging discrimination filed with the USDA before July 1, 1997, alleging discrimination in the period between January 1, 1981 and December 31, 1996. *See Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999*, Section 741(a), (e), PL 105-227 (Oct. 21 1998) (codified at 7 U.S.C. § 2279 Historical and Statutory Notes) ("Section 741"). Section 741 also permitted complainants a right to revive administrative complaints with the USDA within two-years of the enactment of Section 741 in lieu of filing of a civil action. Section 741(b).

G. The Section 741 USDA Litigations: *Pigford, Keepseagle, Love, and Garcia*

Four primary litigations arose from enactment of Section 741: *Pigford*—brought by black farmers; *Keepseagle*—brought by Native American farmers; *Love*—brought by female farmers; and *Garcia*—brought by Hispanic farmers.[8] Collectively, those actions alleged that the USDA engaged in widespread discrimination on the basis of race, ethnicity, and sex in administration of its farm loan program. *Pigford* and *Keepseagle* were certified as class actions and resulted in

---

[8] *Pigford v. Glickman,* D.D.C. Case No. 1:97-cv-01978-PLF; *Keepseagle v. Glickman*, D.D.C. Case No. 1:99-cv-03119-EGS; *Love v. Glickman*, D.D.C. Case No. 1:00-cv-02445-RBW; *Garcia v. Glickman*, D.D.C. Case No. 1:00-cv-2502-RBW.

1    settlements. *Pigford,* 182 F.R.D. 341, 352 (certifying class action); *Pigford*, 185 F.R.D. 82

2    (vacating original class certification, certifying a new class, and approving the consent decree);

3    *Keepseagle v. Johanns*, 236 F.R.D. 1 (D.D.C. 2006). Class certification was denied in *Love* and

4    *Garcia*. *Love v. Veneman*, 224 F.R.D. 240 (D.D.C 2004); *Garcia v. Veneman*, 224 F.R.D. 8

5    (D.D.C. 2004).  Despite the denial of class certification, the Secretary voluntarily created an

6    administrative claims process for Hispanic and female farmers to resolve their claims of

7    discrimination against the USDA. *See* Doc. 402-5 (Exhibit E: *Love* and *Garcia* framework), §

8    VIII.A-B, at 9-14. Participation in the administrative claims process was conditioned on

9    Hispanic and female farmers dismissing their legal claims against the USDA. *Id.* Plaintiff, as a

10   Hispanic female, was a member of each class. However, rather than dismiss her claims against

11   the USDA in favor of pursing the administrative process, she elected to vindicate her rights in

12   this action.

### III. Legal Standard

13

14   A. Rule 12(b)(1) – Subject-Matter Jurisdiction

15           Federal courts are of limited jurisdiction, having subject-matter jurisdiction only over

16   matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co. of*

17   *Am.,* 511 U.S. 375, 377 (1994); *A–Z Intern. v. Phillips,* 323 F.3d 1141, 1145 (9th Cir. 2003). For

18   federal question jurisdiction to exist, the requirements of 28 U.S.C. Section 1331, which gives

19   federal courts jurisdiction only to those cases which arise under federal law, must also be met. 28

20   U.S.C. § 1331. The question of whether a procedural rule is jurisdictional "is not merely

21   semantic but one of considerable practical importance for judges and litigants." *Henderson v.*

22   *Shinseki,* 562 U.S. 428, 434 (2011). Branding a rule as going to a court's subject-matter

23   jurisdiction alters the normal operation of our adversarial system. *Id.* Rule 12(b)(1) allows a

24   party to seek dismissal of an action where federal subject-matter jurisdiction is lacking.

25   Fed.R.Civ.P. 12(b)(1). When subject-matter jurisdiction is challenged, the burden of establishing

26   federal subject-matter jurisdiction always rests with the party who invokes the Court's

27   jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 115 L.Ed.2d 351

28   (1992).

1       The United States Supreme Court in *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 511 (2006),

2  in an attempt to curtail "drive-by jurisdictional rulings," advised courts to be cognizant of the

3  "subject-matter jurisdiction / ingredient-of-claim-for-relief" dichotomy so as not to "erroneously

4  conflate[]" subject-matter jurisdiction with a plaintiff's need and ability to prove a violation of

5  federal law – a merits based determination. To that end, a district court must ensure that a

6  jurisdictional ruling is not made upon a "provision that 'does not speak in jurisdictional terms or

7  refer in any way to the jurisdiction of the courts.'" *Arbaugh*, 546 U.S. at 515 (*quoting Zipes v.*

8  *Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).

9  <u>B. Rule 56 – Summary Judgment</u>

10       "A party may move for summary judgment, identifying each claim or defense – or the

11  part of each claim or defense – on which summary judgment is sought.  The court shall grant

12  summary judgment if the movant shows that there is no genuine dispute as to any material fact

13  and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving

14  party bears the initial burden of "informing the district court of the basis for its motion, and

15  identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

16  admissions on file, together with the affidavits, if any,' which it believes demonstrate the

17  absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

18  see Fed. R. Civ. P. 56(c)(1)(A).

19       "Where the non-moving party bears the burden of proof at trial, the moving party need

20  only prove that there is an absence of evidence to support the non-moving party's case."  *In re*

21  *Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at

22  p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to

23  must set forth "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty*

24  *Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

25  *Corp*., 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must

26  demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under

27  the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec.*

28  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that

a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1436 (9th Cir. 1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at p. 587 (citation omitted).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**IV. Discussion**

The Secretary argues that Plaintiff (1) failed to file an "eligible complaint" within the meaning of the ECOA, and (2) that Plaintiff's failure to file an eligible complaint leaves this Court without subject-matter jurisdiction. The Court addresses the second question first.

A. Jurisdictional Nature of the Eligible Complaint Requirement

The United States, as a sovereign, is immune from suit unless it consents to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)). Congress can waive sovereign immunity, but such waivers are very narrowly construed and must be "unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Alaska Dept. of Natural Resources v. United States*, 816 F.3d 580, 585 (9th Cir. 2016). Although there is no set of "magic words" or term of art required to be used to waive sovereign immunity, *United States v. Kwai Fun Wong*, --- U.S. ----, 135 S.Ct. 1625, 1632 (2015) (citation

omitted),[9] it is well established that when Congress expressly grants district courts jurisdiction over specified types of claims against the United States, it waives sovereign immunity with respect to those claims. *E.g. United States v. Mitchell*, 463 U.S. 206, 212 (1983) (The language of the Tucker Act, granting "district courts … original jurisdiction" over certain types of claims against the United States, is a waiver of sovereign immunity with respect to those claims."). Absent a waiver of sovereign immunity, a district court cannot exercise subject-matter jurisdiction over a claim against the United States. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Mitchell*, 463 U.S. at 212; *McCarty v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Correspondingly, the scope of the United States' waiver of sovereign immunity "define[s] the extent of the court's jurisdiction." *Consejo de Desarrollo Economico de Mexicali, A.C., v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).

The Secretary argues that Section 741(d) sets forth a limited waiver of sovereign immunity by the United States by granting to district courts "original exclusive jurisdiction over … any cause of action arising out of a complaint with respect to which [Section 741(a)] waives the statute of limitations…." 7 U.S.C. § 2279 Historical and Statutory Notes, § 741(d)(1). Section 741(a) waives the limitation period for claims alleged in an "eligible complaint." *Id.* at § 741(a). An eligible complaint is any complaint filed with the USDA before July 1, 1997 that alleged ECOA claims of discrimination in administration of farm loan programs occurring between January 1, 1981 and December 31, 1996. *See Id.* at § 741(e). A claim is timely under Section 741(a) if it was filed by October 21, 2000, two years of the enactment date of Section 741. *Id.*; *see Garcia v. Vilsack,* 563 F.3d 519, 521 (D.C. Cir. 2009) *Benoit*, 577 F.Supp.2d at 17. The Secretary contends that the "eligible complaint" requirement is a jurisdictional prerequisite.

Simply put, there is little consensus on whether the Section 741 eligible complaint

---

[9] Section 2674 of the Federal Tort Claims Act, 28 U.S.C. § 2674—explicitly making "the United States … liable … in the same manner and same extent as private individuals"—is "a limited waiver of the United States' sovereign immunity." *Dugard v. United States*, 835 F.3d 915, 918-919 (9th Cir. 2016).  Although different language is used in Section 702 of the Administrative Procedures Act, 5 U.S.C. § 702 (providing that "the United States may be named as a defendant" in specific kinds of actions), it is also a limited "waive[r] [of] sovereign immunity." *City of Oakland v. Lynch*, 798 F.3d 1159, 1162 (9th Cir. 2015).

requirement is a jurisdictional prerequisite.[10] The Third Circuit concluded that "the eligibility requirements of Section 741 create a jurisdictional prerequisite to the waiver of sovereign immunity contained in the ECOA..."; a plaintiff's failure to have filed an eligible complaint within the period set by Section 741(e) renders the district court without jurisdiction over that claim. *Ordille v. United States*, 216 Fed.Appx. 160, 167 (3rd Cir. 2007); *see Abercrombie v. USDA*, 2006 WL 1371590, *3 (E.D. Ky. May 18, 2006). However, several district courts have rejected the Third Circuit's stance in *Ordille*, instead finding that the eligible complaint requirement "was not intended to have jurisdictional significance." *Benoit v. USDA*, 577 F. Supp.2d at 21, *aff'd* 608 F.3d 17 (D.C. Cir. 2010); *see also Ivy v. USDA*, 2010 WL 2559885, *2-3 (N.D. Miss. June 23, 2010) (limitations period not designed to have jurisdictional significance). Plaintiff endorses the latter position. Doc. 402 at 8.

The Secretary's position begs three questions and answers, explained in more depth, *infra*—(1) Did district courts have jurisdiction over ECOA claims against the United States prior to the enactment of Section 741(d)? Yes. (2) If so, were district courts jurisdictionally limited to hearing ECOA claims brought against the United States only if they were brought within two years? No. (3) If district courts were not so limited, does Section 741(d) limit the jurisdiction of district courts? No.

As to the first question, Section 741 did not create a cause of action or any substantive rights, it simply extended the limitations period for claims under the ECOA for some plaintiffs. 7 U.S.C. § 2279 Historical and Statutory Notes, § 741(a); *see Love v. Johanns*, 439 F.3d 723, 725 n.1 (D.C. Cir. 2006); *see also Visconti v. Veneman*, 204 Fed.Appx. 150, 152 (3rd Cir. 2006). The

---

[10] The Eleventh Circuit recently expressed uncertainty as to whether the eligible complaint requirement was a jurisdictional requirement:

> The district court dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, holding that because ECOA's statute of limitations barred the claim, the United States had not waived its sovereign immunity and the court lacked subject-matter jurisdiction. In the alternative, the district court held that even if ECOA's time bar was not jurisdictional, the ECOA claim was still time-barred and should be dismissed for failure to state a claim. [¶] We need not decide for purposes of this appeal whether ECOA's time bar is jurisdictional such that a time-barred ECOA claim should be dismissed for lack of subject matter jurisdiction rather than failure to state a claim.

*Cannon v. USDA*, 649 Fed.Appx. 892, 894 n.2 (11th Cir. 2016). Several district courts have also identified the issue without coming to a conclusion. *E.g. Estate of Williams v. Vilsack*, 2016 WL 280280, *3 n.4 (S.D. Miss. Jan. 21, 2016).

ECOA is the source of Plaintiff's substantive claim. 15 U.S.C. § 1691e(a); *see Love*, 439 F.3d at 726. There can be no dispute that the ECOA contains a limited waiver of sovereign immunity. As the Fifth Circuit explained in *Moore*, "[t]he plain language of the ECOA unequivocally expresses Congress' intentions: governmental entities are liable under the Act." *Moore*, 55 F.3d at 994. By allowing aggrieved applicants to file claims against a "creditor," 15 U.S.C. § 1691e(a), defining "creditor" to mean "person," 15 U.S.C. § 1691a(e), and defining "person" to mean "government or governmental subdivision or agency," 15 U.S.C. § 1691a(f), Congress waived the United States' sovereign immunity with respect to ECOA claims. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1691e(f), over claims against the United States arising under the ECOA.  *See Moore*, 55 F.3d at 994.

As to the second question, outside of the Section 741 context, several district courts have rejected the government's argument that the running of the statute of limitations in ECOA claims against the United States is appropriately addressed under Rule 12(b)(1). *Williams v. Conner*, 522 F.Supp.2d 92, 99 (D.D.C. 2007); *accord Thiel v. Veneman*, 859 F.Supp.2d 1182, 1197 n.3 (D. Mont. 2012); *Robinson v. Schafer*, 2008 WL 1995354, *5 (M.D. Ga. May 6, 2008). That line of authority recognizes that a statute of limitations may "constitute a condition on the waiver of sovereign immunity" where the statute of limitations is contained in the waiver itself. *Williams*, 522 F.Supp.2d at 98 (quoting *United States v. Mottaz*, 476 U.S. 834, 841 (1986)). However, it reasons that, because the statute of limitation of the ECOA, 15 U.S.C. § 1691e(f), is found in "an entirely separate section of the statute" than the waiver of sovereign immunity, 15 U.S.C. §§ 1691e(a), 1691a(d), (e), the limitations period is not a condition of the government's waiver of sovereign immunity. *Williams*, 522 F.Supp.2d at 99. As a result the limitations period is not jurisdictional. *Williams*, 522 F.Supp.2d at 99.

The Supreme Court's decisions in *Arbaugh v. Y&H Corporation*, 546 U.S. 500 (2006) and *United States v. Kwai Fun Wong*, 135 S.Ct. 1625 (2015) convince this Court that the *Williams* line is correct. The ECOA statute of limitations is not a jurisdictional limitation to claims against the United States.

In *Arbaugh v. Y&H Corporation*, the Supreme Court resolved the issue of whether the

1   Title VII employer-numerosity requirement—that a person employee at least 15 person to be

2   considered an employer—was a jurisdictional condition or an element of a plaintiff's claim for

3   relief. 546 U.S. 500, 509-510 (2006); *see* 42 U.S.C. § 2000e(b). The Court cautioned against

4   "erroneously conflat[ing]" subject-matter jurisdiction in federal question cases with a plaintiff's

5   ability to prove the elements of its claim under federal law. *Arbaugh*, 546 U.S. at 511. Such

6   "drive-by jurisdictional rulings" should be "accorded 'no precedential effect' on the question of

7   whether the federal court had authority to adjudicate the claim in suit." *Id*. at 511. In order for a

8   condition or requirement to be "jurisdictional" Congress must "speak in jurisdictional terms or

9   refer … to the jurisdiction of the district courts." *Id*. at 515. The *Arbaugh* Court held that the

10  numerosity requirement in non-jurisdictional because it is found in a separate provision from the

11  jurisdictional grant, and "does not speak in jurisdictional terms or refer in any way to the

12  jurisdiction of the district courts." *Id.*

13          Post-*Arbaugh*, the Supreme Court explained that—even in actions against the United

14  States involving waiver of sovereign immunity—"most time bars are non-jurisdictional." *United*

15  *States v. Kwai Fun Wong*, 135 S.Ct. at 1632, 1636-1637. It characterized filing deadlines as

16  "quintessential claim-processing rules, which seek to promote the orderly progress of litigation,

17  but do not deprive a court of authority to hear a case." *Id*. at 1632 (citation and internal quotation

18  marks omitted). In order for Congress "to tag a limitations period as jurisdiction[al]" it "must do

19  something special"; it must give some "clear statement" that the procedural bar is "imbued …

20  with jurisdictional consequences" by speaking "to a court's power" over the claim rather than

21  "only to a claim's timeliness." *Id*. at 1633.

22          As correctly noted by the *Williams* court, the limitations period of the ECOA is not set

23  out in jurisdictional terms and is separate from the waiver of sovereign immunity. *See Williams*,

24  522 F.Supp.2d at 99; 15 U.S.C. §§ 1691e(a), (f), and 1691a(d), (e). Although the section

25  purporting to confer jurisdiction to the court immediately precedes the statute of limitations,[11]

26  there is no express congressional intent that the court treat the limitations period as jurisdictional.

---

[11] 15 U.S.C. § 1691e(f) reads in relevant part: "Any action under this section may be brought in the appropriate
United States district court without regard to the amount in controversy, or in any other court of competent
jurisdiction. No such action shall be brought later than 5 years after the date of the occurrence of the violation…."

1   *Ivy v. USDA*, 2010 WL 2559885, at *3; *cf Kwai Fun Wong*, 135 S.Ct. at 1632.  Therefore, the

2   limitations period of the ECOA is not a jurisdictional limitation or a reservation of sovereign

3   immunity for claims filed outside of the limitations period. The Court is not without jurisdiction

4   over ECOA claims filed against the United States outside of the limitations period. *See Williams*,

5   522 F.Supp.2d at 99; *Ivy*, 2010 WL 2559885 at *2-3.

6         That conclusion leads the court to the third question: Does Section 741 have a

7   jurisdiction-stripping effect? If not, its requirements have no impact on this Court's exercise of

8   jurisdiction over Plaintiff's ECOA claim.

9         The only portion of Section 741 framed in jurisdictional terms is subsection (d),

10  providing that "[t]he United States Court of Federal Claims and the United States District Court

11  shall have exclusive jurisdiction over [¶] (a) any cause of action arising out of a complaint with

12  respect to which this section waives the statute of limitations…." 7 U.S.C. § 2279 Historical and

13  Statutory Notes, § 741(d)(1). That section does not purport to strip jurisdiction, it purports to

14  grant "exclusive jurisdiction" to the United States District Court and United States Court of

15  Federal Claims. The impact of that section is to preclude state courts from hearing the claims

16  described in subsection (a). *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, --- U.S.

17  ----, 136 S.Ct. 1562, 1573, 1574 (2016).  However, it does not follow that the requirements of

18  subsection (a) are jurisdictional prerequisites to district court jurisdiction. In fact, the Supreme

19  Court has definitively found that considering similarly structured statutory requirements as

20  restraints on a district court's exercise of jurisdiction "is wrong." *E.g.*, *Michigan v. Bay Mills*

21  *Indian Community*, --- U.S. ----, 134 S.Ct. 2024, 2029, n.2 (2014) (explaining a requirement of

22  25 U.S.C. § 2710(d)(7)(A)(ii)—possession of Indian land—is an element of the statutory right of

23  action, not a jurisdictional prerequisite).[12]

24        Moreover, this Court has found no authority for the proposition that a statute purporting

25  to grant jurisdiction could actually act to strip jurisdiction. The language of jurisdiction stripping

26  statutes follow the same unmistakable structure: for instance, the False Claims Act's public

---

27  [12] 25 U.S.C. § 2710(d)(7)(A)(ii) reads as follows: "The United States district courts shall have jurisdiction over-- (ii)

28  any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands
    and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect…."

1   disclosure bar, 31 U.S.C. § 3730(e)(4) (West 2003) ("No court shall have jurisdiction over an

2   action under this section … unless…."); *Graham County Soil and Water Conservation Dist. v.*

3   *United States*, 559 U.S. 280, 285-286 (2010) (characterizing § 3730(e)(4) as a "jurisdiction-

4   stripping" provision); the limitation on review of removal proceedings added to the Immigration

5   and Nationality Act, 8 U.S.C. § 1101 *et seq*., by Illegal Immigration Reform and Immigrant

6   Responsibility Act of 1996, 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to

7   review any final order of removal…" "except as provided in subparagraph (D)…."), §

8   1252(a)(2)(B) (same structure); *Kucana v. Holder*, 558 U.S. 233, 244 (2010) (characterizing §

9   1252(a)(2)(B) as a "jurisdiction-stripping provision"); and the Financial Institutions Supervisory

10   Act's provision precluding judicial review of administrative actions Board of Governors of the

11   Federal Reserve, 12 U.S.C. § 1818(i)(1) ("No court shall have jurisdiction to affect by injunction

12   … the issuance … of any notice or order under this section…" "except…."); *Board of Governors*

13   *of Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 38-39 (1991), all preclude

14   jurisdiction over claims unless specific prerequisites are met. The structure of Section 741(d)

15   does not lend itself to a similar reading; Section 741(d) does not limit the exercise of federal

16   question jurisdiction pursuant to Section 1331. *See Verizon Maryland, Inc v. Public Service*

17   *Commission of Maryland*, 535 U.S. 635, 644 (2002) (explaining that a statute purporting make

18   some claims reviewable does not limit the exercise of federal question jurisdiction under 28

19   U.S.C. § 1331); *see also Visconti*, 204 Fed.Appx. at 152-153 (noting that the district court had

20   subject-matter jurisdiction "pursuant to  15 U.S.C. § 1691e(f), § 741, and 28 U.S.C. § 1331"

21   despite the absence of any eligible complaint).

22        Finally, no part of the history of Section 741 would lead this Court to conclude that

23   Congress intended to create jurisdictional prerequisites to suit. *See also Kwai Fun Wong*, 135

24   S.Ct. at 1633 (expressing doubt that legislative history could ever provide a clear statement that a

25   statutory condition was designed to be jurisdictional). The Congressional extension of the

26   limitations period through Section 741 was prompted by the government sheltering behind the

27   two-year limitations period of the ECOA despite the troubling results of the USDA's own

28   internal investigation: discrimination in USDA farm loan programs operated by FSA and its

predecessors, a "backlog of complaints of discrimination that had never been processed, investigated or resolved," a "program discrimination complaint process at [FSA that] lacks integrity, direction, and accountability," and "[s]taffing problems, obsolete procedures, and little direction from management [that] resulted in a climate of disorder within the civil rights staff at FSA." *Pigford*, 185 F.R.D. at 88 (internal quotation marks omitted). The Congressional response appears calculated to prevent the limitations period from barring suit against the USDA by those who forewent filing claims with the district court and instead filed claims with the USDA during the period where the USDA was known to have discriminated and ignored complaints of discrimination. Replacing the obligation that the government prove untimeliness with new jurisdictional hurtles for farmers would be inconsistently onerous in light of the Congressional objective and the findings that many complaints filed with the USDA in the relevant time period were simply discarded. *See Id.* ("[F]armers who filed complaints of discrimination never received a response, or if they did … it was a cursory denial…. In some cases, [USDA] staff simply threw discrimination complaints in the trash without ever responding to or investigating them.")

For the foregoing reasons, the Court will deny the Secretary's motion to dismiss for lack of subject-matter jurisdiction.

B. Eligible Complaint Requirement

The Secretary argues that, if the eligible complaint requirement is not a jurisdictional prerequisite, "it is nonetheless an 'essential element of the plaintiff's claim' for which she bears the burden of proof." Doc. 399-1 at 16. The Secretary asks the Court to find that an eligible complaint is a *written* complaint filed with the USDA between January 1, 1981 and December 31, 1996. *Id.* at 13. Arguing that Plaintiff cannot show that she filed a written complaint, the Secretary moves for partial summary judgment. *Id.* at 16.

Plaintiff argues that an eligible complaint, within the meaning of Section 741, includes oral complaints and complaints forwarded to the USDA on the complainant's behalf. Doc. 402 at 10-11. Plaintiff points to an inconsistency between the recognition by the USDA and Congress that submission of claims to the FSA in the relevant time period was futile and the requirement

that Plaintiff have actually filed a written complaint in that time period to be eligible for extension of the limitations period. *Id* at 20-22. Plaintiff also points to the history of affording relief to those who did not file written complaints in the *Pigford* and *Keepseagle* settlement frameworks, and in the voluntarily created claims process framework for Hispanic and female farmers established by the USDA after denial of class certification in *Love* and *Garcia*. *Id* at 22-31. Plaintiff suggests that the settlement of claims where no written complaint was filed with the USDA indicates that the eligible complaint requirement can be satisfied by non-written complaints to the USDA. *Id*.

As explained in greater depth below, in order for the statute of limitations extension of Section 741 to apply, a plaintiff must have filed a written discrimination-related complaint with the USDA in the applicable time period. Because Plaintiff cannot create a genuine dispute regarding whether she filed a written discrimination complaint in the relevant time period, the Secretary's motion for partial summary judgment will be granted.

The Court concludes that the Section 741(e) requirement that a complaint be "filed" requires filing of a written complaint because: (1) the USDA's complaint process in effect when Congress enacted Section 741 required a written complaint, (2) Plaintiff has not presented and the Court has not found any judicial reading of the term "filed" that could require anything other than lodging a written document, (3) the regulations promulgated by the USDA regarding the meanings of "filed" and "complaint" for purposes of Section 741(b) supports a finding that the Section 741(e) eligible complaint requirement necessitates having filed a written complaint with the USDA, and (4) the USDA's history of accepting non-written complaints in the settlement context is not binding or even instructive on the meaning of the Section 741(e) filing requirement.

First, as the Secretary points out, the USDA has had a longstanding requirement that claims of discrimination through the administrative-complaint process be submitted in writing. *See* 31 Fed. Reg 2,645 (Feb. 8, 1966) (promulgating 7 C.F.R. § 15.52 ("Any person … subjected to discrimination [by the USDA may] ... file directly with the Secretary or any agency a written complaint based on the ground of such discrimination")); 64 FR 66709-01 (Nov. 30, 1999)

1   (removing 7 C.F.R. §§ 15.50-15.52 and adding substantially the same regulations at 7 C.F.R. §§

2   15d.1-15d.5). That filing requirement existed at the time that Congress enacted § 741. Congress

3   is presumed to be aware of "existing administrative regulations" when it legislates on that

4   subject-matter. *Marchese v. Shearson Hayden Stone, Inc.*, 822 F.2d 876, 878 (9th Cir. 1987)

5   (citing *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982)); *see Grove City College v.*

6   *Bell*, 465 U.S. 555, 588 (1984) (explaining that administrative regulations existing at the time of

7   a Congressional enactment on a topic can shed light on Congressional intent if any ambiguity

8   exists); *United States v. Argueta-Rosales*, 819 F.3d 1149, 1159 (9th Cir. 2016). Congress was

9   clearly aware of the USDA administrative complaint system requiring filing of written

10   complaints when it enacted Section 741. In fact, it conditioned extension of the limitations period

11   on an aggrieved applicant having filed such a complaint with the USDA. Because Congress was

12   aware of the USDA complaint process and because Congress expressed no intent to have the

13   statutory meaning of "complaint" (within the meaning of Section 741(e)) be more expansive than

14   the pre-existing regulatory meaning (7 C.F.R. 15d.4), a complaint submitted to the USDA must

15   have been in writing to be an eligible complaint for purposes of Section 741(e).[13]

16       Second, Section 741(e) requires that the complaint be "filed" with the USDA. In this

17   context, the Court has not found a single judicial reading of the term "filed" that does not require

18   a written submission. *See*, *e.g.*, *Sebelius v. Cloer*, --- U.S. ----, 133 S.Ct. 1886, 1894-1895

19   (2013); *Arrtuz v. Bennett*, 531 U.S. 4, 8 (2000) ("An application is 'filed,' as that term is

20   commonly understood, when it is delivered to, and accepted by, the appropriate court officer for

21   placement into the official record."); *Hull v. United States*, 146 F.3d 235, 238 (4th Cir. 1998).

22   Similarly, Black's Law Dictionary provides the following definition of "file": to deliver a legal

23   document to the court clerk or record custodian for placement in the official record. FILE,

24   Black's Law Dictionary (10th ed. 2014). The plain meaning of the requirement that an aggrieved

25   applicant file a complaint with the USDA is that the applicant must submit a written grievance.

26       Third, assuming that there is any ambiguity in Section 741 after the foregoing analysis,

---

27
28   [13] To find otherwise would mean that Congress intended to allow those who never filed valid complaints with the USDA to revive claims that had never been appropriately alleged. Such a reading would effectively erode the eligible complaint requirement.

1   two rules of statutory and regulatory construction are relevant in evaluating the eligible

2   complaint requirement in the context of USDA regulations interpreting Section 741. First, the

3   force given to a regulation may be particularly strong "if it is a substantially contemporaneous

4   construction of the statute by those presumed to have been aware of congressional intent."

5   *National Muffler Dealers Ass'n Inc. v. United States*, 440 U.S. 472, 477 (1979). Section 741 was

6   enacted as part of the Omnibus Consolidated and Emergency Supplemental Appropriations Act

7   of 1999 on October 21, 1998. PL 105-227. Less than two months later, the Secretary of the

8   USDA promulgated 7 C.F.R. 15 part (f), which again defined a "complaint" and when a

9   complaint is "filed." 7 C.F.R. § 15f.4 (defining a complaint as "a written document filed with the

10  USDA by a person alleging discrimination by the USDA under a covered program"), § 15f.27

11  (explaining that a document is "considered filed when postmarked or when it is received and

12  date-stamped by the docketing clerk"). Second, although the regulations in Section 15f are only

13  applicable to claims processed by the USDA under Section 741(b),[14] courts ordinarily assume

14  that "identical words used in different parts of the same act are intended to have the same

15  meaning" unless context dictates otherwise. *Utility Air Regulatory Group v. E.P.A.*, --- U.S. ----,

16  134 S.Ct. 2427, 2441 (2014) (quoting *Environmental Defense v. Duke Energy Corp.*, 549 U.S.

17  561, 574 (2007)). In this case, Section 741(b) and 741(e) both relate to *filing* of an administrative

18  *complaint* with the USDA.[15] The USDA regulation explaining that a complaint is a written

19  document that is filed when postmarked or stamped (both inapplicable to non-written

20  complaints) is instructive in determining that the eligible complaint requirement also requires a

21  written complaint submitted to the USDA.

22        Fourth and finally, Plaintiff's reliance on the expansive definition of "eligible complaint"

23  set forth in *Pigford*  and *Keepseagle* is misplaced. *See Pigford*, 185 F.R.D at 93 ("Under the

24  original class definition, a class member must have filed a "written" complaint of discrimination

---

25  [14] Section 741(b) is the portion of Section 741 allowing for determinations by the USDA in lieu of filing a civil

26  action. 7 C.F.R. § 15f.1.

27  [15] *Compare* § 741(b) ("The complainant may, in lieu of filing a civil action, seek a determination on the merits of the eligible complaint by the Department of Agriculture if such *complaint* was *filed* not later than 2 years after the date of enactment of this Act.") (emphasis added) *with* § 741(e) ("As used in this section, the term 'eligible complaint'

28  means a nonemployment related *complaint* that was *filed* with the Department of Agriculture before July 1, 1997….") (emphasis added).

1  with the USDA. The revised class definition provides that the class member must have "filed a

2  discrimination complaint," and under the terms of the proposed Consent Decree, class members

3  who have participated in "listening sessions" or have complained to members of Congress in

4  certain case are deemed to have "filed" a discrimination complaint.") The *Pigford* Court

5  amended the class to remove the written complaint requirement based on a consent decree

6  entered into by the USDA in that litigation. *Id*. The USDA *may* waive the limitations period of

7  the ECOA in ways not mandated by Section 741.[16] It did so. However, the USDA's decisions to

8  broadly waive the limitations period in the *Pigford* and *Keepseagle* litigations do not compel the

9  same outcome here; those settlement agreements are of no precedential value in interpreting the

10  meaning of Section 741. *See Baptist Memorial Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226,

11  230 (D.C. Cir. 2009); *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1314-1315

12  (10th Cir. 2004) ("[S]ettlement agreements have no precedential weight….")[17]

13       For all of these reasons, Section 741 does not extend the limitations period for an

14  aggrieved applicant unless a written complaint was filed within the period set out by Section

15  741(e).

16       The Secretary propounded the following discovery and received the following response

17  regarding the discrimination complaints alleged in the FAC:

18  **Interrogatory No. 18**

19
20  For each and every discrimination complaint you filed regarding the incidents
    alleged in the FAC identify or describe:

21         (a) the date when you filed the complaint;

22

---

23  [16] The Court notes that the USDA could not have waived the limitations period if such a waiver implicated sovereign immunity.

24  [17] *See also United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) ("Consent decrees are entered into by parties to a case after careful has produced agreement on their precise terms. The parties waive their right to litigate the issues

25  involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the

26  parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant

27  decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve."); *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, --- U.S. ----, 133 S.Ct. 1184, 1194-1195 (2013)

28  (A district court's role at class certification is not to "engage in free-ranging merits inquiries…. Merits questions may be considered … only to the extent [] that they are relevant to" resolving Rule 23 prerequisites.)

(b) the contents of the complaint;

(c) the format of the complaint, e.g., written, oral, or some other form of presentation or representation;

(d) the relief or redress sought; and

(e) the entity, office, or person with whom the discrimination complaint was filed.

**Response to Interrogatory No. 18**

1980 – 1996 – Oral complaints were made directly to USDA officials wherein I sought the benefits I was being denied. No system was in place to file complaints and get a case number that I was aware of.

From 1979 – 1995 – I also complained in a similar fashion at congressional offices of Congressman Pashayian and Dooley, Sen. Boxer, and in 1997 – Congressman Bonilla.

I always complained to local non profit agency West Side Planning Group in Fresno, Ca.

1995 – State ASC Director Smythe filed on my behalf regarding the discrimination I claimed on my 1993 grape disaster loss application.[18]

Doc. 399-3 at 4, Decl. of Joseph Frueh, Exh. 1. The Secretary has made a preliminary showing that Plaintiff cannot prove that she submitted a written complaint alleging discrimination in the relevant time period. The burden shifts to Plaintiff to set forth "specific facts showing … a genuine issue" of fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248.

In her declaration in opposition to the Secretary's motion, Plaintiff avers that she regularly orally complained about discrimination in USDA farm loan programs to USDA officials who would "often but not always, write down her oral complaint[s]." Doc. 402-7 at ¶ 6. "When they did so, they told [Plaintiff] that they would 'file' [her] [then]-written complaint … by forwarding it to the appropriate USDA office in Washington, D.C." *Id.*

Plaintiff's response to interrogatory number 18 indicates that she only made oral

---

[18] It is undisputed that Plaintiff filed a written complaint regarding denial of disaster relief benefits. It is also undisputed that denial of disaster relief is not a credit transaction actionable under the ECOA. *See* 15 U.S.C. 1691(a); FAC at ¶¶ 62-71.

complaints to the USDA (and Congresspersons). In fact, Plaintiff indicated that she was unaware that a "system was in place to file complaints and get a case number." Doc. 399-3 at 4. Plaintiff's attestation that USDA officials told her that they would file a written complaint on her behalf is devoid of detail and inconsistent with Plaintiff's asserted lack of knowledge of the existence of an administrative complaint system. Where the only evidence submitted in support of existence of a material fact is "uncorroborated and self-serving testimony," *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996), "lacking detailed facts and any supporting evidence," *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), the nonmoving party has not created a genuine dispute. Plaintiff's declaration that sometimes, some unnamed USDA officials would write down her unspecified complaints of discrimination is inadequate to create a genuine issue of material fact. Plaintiff has failed to carry her burden. The Secretary's motion for summary adjudication will be granted.

**V. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  The Secretary's motion to dismiss for lack of subject-matter jurisdiction is DENIED;

2.  The Secretary's motion for summary adjudication is GRANTED.

This matter will proceed against the Secretary on Plaintiff's second cause of action for violation of the Administrative Procedures Act.

IT IS SO ORDERED.

Dated:   December 20, 2016 _____            _____
                                              SENIOR  DISTRICT  JUDGE